**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**ANTOYNE MAURICE PENICK** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:26-CV-P339-JHM**

**JAILER JEFF TINDELL et al.** **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff Antoyne Maurice Penick, a pretrial detainee at the Oldham County Detention Center (OCDC), proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this action will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff's complaint (DN 1) names as Defendants OCDC Jailer Jeff Tindell in his individual capacity, as well as the OCDC and the U.S. Marshal's Service (USMS). He alleges that on April 16, 2026, he was given a meal tray containing egg-based products even though he is documented at OCDC as being allergic to eggs. However, he could tell by the smell that eggs were present and immediately informed a corrections officer who then called the kitchen for a new tray without any allergens. About three weeks later, he was served a dinner tray without a label informing him it contained eggs, but which included egg products. Upon eating, Plaintiff threw up and his throat closed from his allergic reaction. He was administered an Epinephrin injection to counter the allergic reaction.

Plaintiff contends that his due-process rights and his right to be free from cruel and unusual punishment were violated by staff failing to follow his medical history protocol and not properly

labeling his trays. He asks for compensatory and punitive damages.

Because Plaintiff filed a very similar lawsuit after he filed this one, the Court consolidated both actions, and the complaint in the later-filed case was docketed as an amended complaint in this case (DN 10). In the amended complaint, Plaintiff asserts that on July 2, 2026, he was served a breakfast containing oatmeal with eggs which triggered an allergic reaction, causing his throat to swell, making him unable to breathe, and again requiring an Epinephrin injection. The Epinephrin raised his blood pressure to 200/180, and he required an emergency trip to the hospital. Plaintiff alleges that he almost died "because of the jail and kitchen staff not being responsible and overlooking my medical issue and allergies." He brings this claim against OCDC and Jailer Tindell in his official capacity. Plaintiff asks for compensatory and punitive damages and an apology from the Jailer.

Finally, Plaintiff has also filed a document which the Court considers to be an amendment to his complaint and amended complaint (DN 14). *See* Fed R. Civ. Proc. 15(a) ("A party may amend its pleading once as a matter of course [in certain circumstances]."). In it, he states that on September 20, 2026, he was served a tray labelled as having no eggs, but the nurse saw it, took it to the kitchen, and informed kitchen staff that Plaintiff was very allergic to eggs. Plaintiff was then provided a fresh tray. However, on the new tray was a food item containing egg product, which caused an allergic reaction when Plaintiff ingested it. He states he was given medication to stop the allergic reaction before it became too severe.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted,

or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. ANALYSIS

### A. OCDC

OCDC is not a "person" subject to suit under § 1983 because municipal departments, such as detention centers, are not suable under § 1983. *Marbry v. Corr. Med. Servs.*, No. 99-6706, 238 F.3d 422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, Oldham County is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990). The Court therefore will construe the claims against Defendant OCDC as claims brought against Oldham County. *See Matthews v. LMPD*, No. 3:19-CV-P581-RGJ, 2019 WL 5549209, at *2 (W.D. Ky. Oct. 25, 2019).

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). This means that Plaintiff's official-capacity claims against Defendant Tindell are actually against Oldham County, Defendant Tindell's employer.

"[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. When a § 1983 claim is made against a municipality or county, such as Oldham County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county as an entity is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality or county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691. The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff does not allege that anyone violated his constitutional rights pursuant to a policy or custom of Oldham County. Accordingly, Plaintiff's claims against Defendant Tindell in his official-capacity and Oldham County must be dismissed for failure to state a claim upon which relief may be granted.

**B. USMS**

Since the USMS is a federal entity, the Court construes Plaintiff's claims against it as ones brought under *Bivens v. Six Unknown Named Fed. Agents of Fed. Bureau of Narcotics*, 403 U.S.

388 (1971), not § 1983. *See Bennett v. U.S. Marshal*, No. 4:22-CV-00022-JHM, 2022 WL 2758542, at *2 (W.D. Ky. July 14, 2022) (citing *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) ("We review *Bivens* and § 1983 actions under the same legal principles, except for the requirement of federal action under *Bivens* and state action under § 1983.")).

"The United States Supreme Court has declined to extend *Bivens* liability to permit suit against a federal agency." *Watkins v. F.B.I.*, No. 3:13-CV-204-S, 2013 WL 3324065, at *2 (W.D. Ky. July 1, 2013) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994)). Courts within the Sixth Circuit have applied this rule and dismissed suits specifically against the USMS. *Bennett*, 2022 WL 2758542, at *2; *Culliver v. Corr. Corp. of Am.*, No. 99-5344, 2000 WL 554078, at *2 (6th Cir. Apr. 28, 2000); *Mathis v. U.S. Marshal Serv.*, No. 2:11-cv-271, 2011 WL 1336575, at *2 (S.D. Ohio Apr. 5, 2011); *see also LeVay v. Morken*, 598 F. Supp. 3d 655, 663 (E.D. Mich. 2022) ("The only remedy available under *Bivens* is money damages from an individual federal employee."); *Olita v. United States*, No. 21-2763-JTF-TMP, 2022 WL 874179, at *1 (W.D. Tenn. Mar. 23, 2022) (same). Therefore, the Court will dismiss any claims against the USMS.

**C. Individual-Capacity Claim against Defendant Tindell**

The Sixth Circuit Court of Appeals recently confirmed that *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), is the correct standard for evaluating a claim for most conditions-of-confinement claims brought by pretrial detainees. *Poynter by & through Fernandez v. Shirley*, __ F.4th __, No. 25-5188, 2026 WL 2641092, at *6 (6th Cir. Sept. 8, 2026) (en banc). The *Farmer* deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 35-37 (1993). To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."

*Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

*1. Objective prong*

"An inmate's food allergies can present a sufficiently serious risk to the inmate's health . . . where prison officials give the inmate unapproved food which causes a serious allergic reaction . . . ." *Vartinelli v. Aramark Corr. Servs., LLC*, No. 18-CV-10964, 2019 WL 1402653, at *7 (E.D. Mich. Mar. 28, 2019) (quoting *Bailey v. Aramark Corp.*, No. 16-343, 2017 WL 3841687, at *3-4 (E.D. Ky. Sept. 1, 2017)). Here, the Court accepts that Plaintiff's food allergy is a sufficiently serious medical condition to satisfy the objective component. *See, e.g.*, *Jeffries v. Shelby Cnty. Dep't of Corr.*, No. 221CV02161JTFATC, 2021 WL 3040763, at *4 (W.D. Tenn. July 19, 2021) ("The complaint suggests dangers posed by Jeffries's allergies, including constricted breathing and chest swelling after he consumed food that contained, or was exposed to, peas. . . . A 'serious medical condition' may be plausibly inferred from these factual allegations.").

*2. Subjective prong*

However, Plaintiff fails to allege that Defendant Tindell or any other staff knew of the risk of serious harm to him from consuming eggs and then intentionally disregarded that risk. In fact, in the incident in which Plaintiff recognized the smell of eggs, the correctional officer whom he alerted immediately provided him the correct meal tray. On another occasion, when a nurse recognized that Plaintiff had been served a tray containing eggs, she ensured he received a new tray. Unfortunately, that tray also contained egg products of which he was not made aware. But no facts are alleged to suggest that any employee "know[ingly] disregard[ing] an excessive risk to inmate health or safety" gave him a mislabeled or unlabeled meal tray containing egg products.

*Poynter*, 2026 WL 2641092, at 837. Plaintiff's allegations only establish at most negligence by providing him trays that were not properly labelled as containing eggs.

In contrast to the case at bar, in *Still v. Wellpath, Inc.*, Still alleged that the defendant knowingly served him regular food trays for breakfast and lunch, instead of special diet trays to address his gluten allergy. No. 2:26-CV-32, 2026 WL 2589523, at *2 (W.D. Mich. Sept. 2, 2026). At breakfast, Still told the defendant that he was supposed to receive a diet tray; the defendant responded that he did not have a diet tray to give him and that "he's not inclined to contact food service to order it." *Id.* At lunch, Still again told the defendant that he was allergic to gluten and would get sick if he ate the regular food. *Id.* The defendant replied that Still "was trying to make him work" and that Still could either accept the regular tray or not eat. *Id.* After lunch, Still felt sick and experienced "severe stomach pains and diarrhea that lasted for multiple hours." *Id.*

The next day, the defendant again gave Still regular food trays for breakfast and lunch. *Id.* Still "tried to reason with" the defendant, but the defendant became annoyed and told Plaintiff he could either eat the regular food "or starve." *Id.* Shortly after eating these meals, Still felt sick, had stomach cramps and pains, and "had to rush to the toilet to vomit." *Id.* The following day, the defendant again served him regular food trays for breakfast and lunch. *Id.* When Still complained, the defendant threatened to put Still on "food loaf." *Id.* Still was sick with stomach cramps and diarrhea shortly thereafter. *Id.*

The *Still* court concluded that although Still had by no means proven his Eighth Amendment claim regarding his receipt of regular trays despite his gluten allergy, it would not dismiss the Eighth Amendment claim at the initial review stage because the alleged facts satisfied the subjective prong. *Id.* at *8.

Or, compare *Grooms v. Cox*, in which the court allowed the plaintiff to amend to explain his pretrial or incarcerated status[1] where he alleged "that Defendants have *intentionally* served him food items to which he is allergic (pork and pineapple) on more than one occasion, resulting in physical harm to him, and at least one nurse has refused to provide medical treatment to him." No. 2:23-CV-00044, 2023 WL 5496479, at *6 (M.D. Tenn. Aug. 23, 2023) (emphasis added).

Here, Plaintiff alleges no intentional act by a person who knew of the danger his egg allergy posed. He alleges instead that staff are failing to follow his medical history protocol and are not properly labeling his trays, but he ascribes no intentional conduct. As such he fails to allege facts sufficient to satisfy the subjective prong. *See Vartinelli*, 796 F. App'x at 870 (even assuming that prisoner's fish and peanut allergy are objectively serious, prisoner failed to allege facts sufficient to establish the subjective component) (citing *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 895 (6th Cir. 2004)); *Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. July 17, 2017) ("While Balcar's claims may show some negligence regarding the defendant's attention to his diet requests and allergies, he has failed to allege how the defendants have perceived facts from which they could infer a substantial risk to him, drew this inference from the facts, and nevertheless disregarded the risk."); *Jeffries*, 2021 WL 4189646, at *4 ("The amended complaint does not contend that any particular Defendant specifically knew about Jeffries's pea and coconut allergy and nonetheless served him foods containing, or crossed with, those allergens. At most, Jeffries suggests administrative oversight concerning special diets at the jail. . . . But any such inattentiveness does not demonstrate an unconstitutionally culpable state of mind for Eighth Amendment purposes.").

---

[1] At the time of the *Grooms* decision the distinction between an incarcerated prisoner and a pretrial detainee was necessary to determine which deliberate-indifference standard to use. *See Poynter*, 2026 WL 2641092, at *6.

Because Plaintiff fails to allege facts sufficient to satisfy the subjective prong, he fails to state a claim upon which relief can be granted. *See, e.g.*, *Locke v. Ross*, No. 1:26-CV-181-DCLC-MJD, 2026 WL 2969110, at *3 (E.D. Tenn. Oct. 2, 2026) (dismissing on initial review because "nothing in the complaint suggests that Defendant Sheriff Ross knows that Plaintiff is allergic to mold in a manner that causes the ceiling tiles to affect Plaintiff's health but has failed to address that, such that the Court could plausibly infer that he has been deliberately indifferent to a risk of harm to Plaintiff").

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this case.

Date: October 20, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.009